This case is clearly ripe for review. The regulations and the guidance interpreting the regulation that are at issue are clearly final agency action. The Department of Labor has been using the challenged rules daily since 2005 to make final labor certification decisions as to the wage rate that has to be offered to foreign workers. They have offered a position that they're going to reconsider. They're reconsidering this rule, or they're going to issue a proposed new rule, and that's coming right around the corner, Mike. Two months. See? Yeah. About six weeks, two months. That is the heart of the case, Your Honor. In that light, American Petroleum would seem to suggest that maybe this case should not be addressed. You are familiar with that case? Yes, I am. Let me address that. What I wanted to say is under traditional rightness analysis, there's no question this case is right. The only issue, the only wrinkle that comes in is the department is planning a future rulemaking. But it is black-letter law that a future rulemaking that will be prospective in effect only cannot render the current use of concrete regulations, final determinations, somehow unright. And it is the current use of these regulations that we are challenging. How long is that process? What they're talking about is issuing a proposed rule. Correct. Can it be proposed and adopted? I mean, it has to go under notification process and so forth. Notice and comment? I have another case against the Department of Labor involving the H-2A program, but the department has said they need a minimum of nine months between publication and the final rule. So if they propose a rule, it would take from now maybe a year or so before you have a final rule? And that is if they publish a final rule. In these foreign labor programs, it has happened where the department publishes a notice of proposed rulemaking, they get the comments, and then they decide they're not going to publish a final rule after all. And Congress can't defund it or fail to budget it, so even if they publish it, it's not going to get affected. Absolutely. And that is a key distinction between this case and the American Petroleum case. The American Petroleum was a fait accompli, no question. They had already published the rule, and because of a settlement agreement, there was a date certain six months after the opinion was issued by which a final rule had to be issued. Let me ask you a question here. If we agreed with you and we decided, no, we have to decide this case, and then we took the next step and decided that you were right on the merits, would there be retroactive relief to be granted? In other words, what effect would that have on all these determinations that have been made over a number of years? Would the people get more money, or what would happen? That has actually come up in a prior case. I don't think it's cited in our brief, but NAACP and a case called Frederick County, where a piece rate regulation for apple pickers was declared invalid just under the APA. And time went on, and the workers then sued, saying they didn't get – if it was an invalid rate, they should have gotten higher wages. The D.C. Circuit said that that was actually a form of quantum merit and actually upheld – the district court granted back wages for some of the years and not for others, and that was upheld by the D.C. Circuit in a case called Frederick County Fruit Growers versus Rush, I believe. It's from 1992. So it would not be in this case. Well, that's up before us for sure. You agree we should adjudicate this matter without considering any retroactive – that's not important. It's down the road, but the point of the matter is a future rulemaking. What DOL is saying makes this case unright. Well, if you wait for that, then the workers have no opportunity to seek quantum merit under a lawful regulation. Okay, getting back to API. In this case, the way I read your brief, you don't accuse the Department of any bad faith or any improprieties. I mean, they appear to be doing their best job. They're doing as best they can with some limitations on their ability to act. Unlike API, where there was definitely some problem with what was going on, and there was definitely a feeling of bad faith, I should say, or a hint of it. You don't have that in this case. Does that make some difference? Actually, Your Honor, I think it's quite the opposite. You think it's the opposite? I mean, I don't think we need to accuse anybody of bad faith. Well, it makes a difference in adjudicating it, though. I think the department is acting arbitrarily. Yes, I agree. Clearly acting arbitrarily. But you don't claim because they have faith in it. But the difference is, in API, what happened was the agency – the prior rule said all solid – what are they – secondary materials have to be regulated as solid waste. Then they published the challenge rule that said, okay, we're going to deregulate some of these secondary materials, but we're not sure about these catalysts. So we're going to study the catalysts as to whether we can deregulate those. So the regulation actually didn't do anything other than announce some future rulemaking, but they continued to regulate it as solid waste while they studied it. Here the department is doing exactly the opposite. They say they need to study whether private wage surveys are accurate, what their economic impact is, but instead of disallowing them while they study it, they allow them. They are every single day certifying to the Department of Homeland Security that private wage surveys accurately set prevailing wages that will not adversely affect U.S. workers. But like APIs are going one step at a time, so to speak. But one step at a time is fine. But what DOL is doing here is putting the cart before the horse. They're saying we're going to make a final determination that foreign workers can be brought in at these wages, but we really don't know whether they're causing an adverse effect, so we want to study it. That is arbitrary. An agency can – if they want to go one step at a time, what they should do is say, okay, you have to pay the government survey wage, we will study whether private surveys are okay, and once we've finished studying it, if they are, we'll let you use them. But what you don't do is say, use them, we will certify that they are valid, but we really don't know whether they're valid, we're going to make that decision down the road, and you can't review whether that is the cart before the horse because we haven't made the final determination. And if you do get a disposition, perhaps you'll be titled a quantum narrow it or I don't know what, you know. It isn't just the past. These certification decisions are made, I think, 180 days in advance. Right now, the certification decisions for 2015 are being made. Are they being made on the basis of private surveys? For those employers who can afford private surveys. That part of the problem here is there's a government survey wage that DOL says is the proper wage, and then there are these private surveys that DOL specifically found in 2011 are invalid. They give employers the choice. If an employer can afford a private survey, then they get to pay a lower wage. If they can't afford a private survey, they have to pay the government wage. Your request is that we vacate the 2013 rule? Our request is to vacate the portion of the 2013 rule that allows employers to use private surveys whenever they want. And that's because you don't like them? Because the Labor Department made an about face on the rationale for the rule? It's because it's not supported by any reasoning? All of the above. It's arbitrary. We want to vacate it because it is arbitrary. It is arbitrary because the Department, one, has never explained why they abandoned their prior policy of only allowing private surveys where there was no government survey. What happens if we did that? What's left on the table for determining the appropriate wages? Well, number one, there is the government survey. Number two, there is the prior regulation, which is the 2011 regulation that has been upheld by this court. Can we vacate? I mean, if we vacate the rule, there won't be anything? You just want that portion of the rule vacated? All we're asking is to vacate the portion of the rule that permits the use of private surveys even where there is a valid government survey. Vacation would be a drastic step, and as you've acknowledged, it's not exactly what the D.C. Circuit did. I mean, I think under D.C. Circuit law, vacator is appropriate here. Remand without vacator is only appropriate where there is some argument on the part of the government that they can justify the current rule, and there is nothing in the Department's brief that suggests they can justify allowing employer surveys whenever there is a valid government survey. In fact, the only thing they say is they make the argument that private surveys may be valid under certain circumstances, namely when there is no, you know, fewer jobs for which the government survey doesn't apply, and I agree. Well, except vacator would, vacator regulation would cause disruption, I think, of the H-2B program, especially if there's further appropriation problems here. Your Honor, a couple points on that. It will not cause disruption. There are, there's the government survey wage that says prevailing wage, and if you vacate the portions of the IFR we're talking about, the prior regulation would then go into effect. Okay, the prior regulation would kick in. And the prior regulation has very clear rules. You use private surveys if there is no government survey. So there's no disruption at all, and as for appropriations, there's not an iota of evidence that the reason Congress held up funding for the 2011 rule had anything to do with private surveys. The one thing the government cites to support that is a press release from Senator Mikulski, which if you actually look at it, cites to her support for the Senate immigration bill, which codifies the 2011 regulation. Is that at all relevant given that they, in effect, issued the appropriation for the 2011 rule that contained the private survey? Yes. How can the government argue that if we put the 2011, if you vacate and the 2011 rule goes into effect, there will be a hiatus because Congress will suspend funding, but Congress has already funded the 2011 rule. Well, that's their position in the brief. I'll have to see what their position is where you are. That is what I read in the brief. This is definitely why it would be a drastic thing to go to the merits and vacate, as your request is. And just to finish a point I made earlier, vacater is especially important because, as I say, these decisions, these wage rates are issued four to six months in advance, or 120 days in advance, so that right now they're making decisions for 2015. If there is no vacater and we have to wait until DOL completes a rulemaking process that could take a minimum of nine months, we're going to be talking about certifications for 2016, and every single certification puts U.S. workers in the position of having to choose to either accept depressed wages or be replaced by foreign workers. And that's actually a very important point. I want to emphasize that. The consequence of using private surveys? Yes, yes, because DOL has found these surveys set. There was a finding. Let me ask you generally. Was there a finding that the depressed wages that occur as a result of the use of private surveys affects all wages, not just immigrants? It affects all wages, not just the immigrant wages. Or is that true? That was DOL's finding when it published the 2011 rule. Well, that's what the whole case is about. Exactly. And the way it affects U.S. workers' wages is the certification says this is the appropriate wage for importing foreign workers. But once you set the wage for foreign workers, that operates as a cap on U.S. worker wages, because what it means is if a worker goes to an employer and says, well, I'd be happy to take your landscape job, but I want $10 an hour, and the employer says, well, I've been certified for foreign workers at $9.50. So you either accept $9.50 or you're declared unavailable and I get to replace you with foreign workers. That's how it affects U.S. workers. Just one more question. The Department of Labor has, if I'm not mistaken, said that they have been requested by the Department of Homeland Security to use the private surveys because they need that information in determining whether to issue certifications. Have you heard anything of that? No, no. Do you disagree with it? It is absolutely untrue. The only reference to that is in the April 2013 rule. The only explanation the Department of Labor gave for allowing unlimited use of private surveys was it would help the Department of Labor provide certifications to the Department of Homeland Security. There's no evidence the Department of Homeland Security has ever, they don't care. I couldn't figure out why, but maybe Mr. Forney can clarify if he's familiar with that.  Thank you. Thank you. May I please support Geoffrey Forney for appellee United States Secretary of Labor? Council on the other side gave a rather grim description of how long it would take to adopt the proposed regulation from the time it is proposed. What did you think of that time frame? I can't disagree with it. Rulemaking does take a long time, given the constraints imposed by Congress through the Regulatory Flexibility Act. That is, you have to consider the costs and benefits on small businesses, whether that's applicable. There are executive orders that impose cost-benefit analysis regimes. He says, look, retroactive payment is something that's not before us. And in the interim, it could be that there's injustice being done and it may not get remedied. What did you think of that? He says that a standard is being used that's depressing wages. I mean, there's a certain field of that. Let me make sure I'm clear on the question. I discerned two points, the retroactivity issue and then whether there's an adverse effect. Is that correct? Yeah. Well, as far as retroactivity is concerned, I mean, there is a line of case law. If the court does rule that the agency's decision in publishing a regulation is ultra-vary, so contrary to the statute, that is the court rendering an issue of federal law and it is law for all time and it would actually have some kind of retroactive effect. How that would be teased out in a particular nuance in this case, I'm not sure. It would be unbelievably complicated probably. It would be very legally complicated. I mean, there could be some claims to back wages and there may be the necessity for going back and reopening past cases and readjusting wage rates in the past. If, in fact, this court's opinion were rendering an issue of federal law, that would be law for all time. Now, as far as the adverse effect is concerned, I mean, CATA, the appellants, argue in their reply that and in argument today that the department is making ripe decisions every day because they're certifying employers' applications that have requests for prevailing wage rates based on private surveys. But they haven't shown that there is an adverse effect because of that. Well, let me ask you something. Why exactly should we extend the doctrine of prudential ripeness, which you've asked here? And asking for its – you actually have to – you admit, in effect, by asking for the prudential ripeness that the case is ripe, but you want to say that it's ripe, but prudentially it's prudent to fend this off. And how could we buy that when the Justice Department attorney actually conceded the case is ripe for oral argument before Judge Davis? Right. Well, yes, my failings as a counsel below, I wouldn't want that to adversely affect the government. So I do apologize. But I think we were all caught off guard. And admittedly, we hadn't considered the ripeness issue, but Judge Davis properly did sua sponte consider the issue. So as far as we're concerned, the case is ripe. No. What I meant below upon further reflection was that the case is – there's a final agency action. That is true. That can't be denied. But the finality analysis and the ripeness analysis are distinct. You can have a final agency action, but it's not ripe for review. The tests are distinct. I mean, final agency action is whether there's a culmination of a consummation of an agency decision-making process that has legal consequences from Bennett v. Spears. But the ripeness argument, ripeness analysis is very different. It's whether the actual final agency action is fit for judicial review. But counsel says that it's going to take maybe a year to get a new decision. In the meantime, it's being used and having a consequence in order to get reviewed. Well, you know, that doesn't grab you as unreasonable. I mean, they're paying on that basis. Well, perhaps not, but that's not the legal test. Just simply because a final agency action has an effect doesn't mean that it's ripe for review. And I think that's what the AT&T and the 2012 American Petroleum Institute case teach. But, you know, you have a group of people, and I don't want to be unkind in describing them, but they probably change all the time, you know, coming into the country and leaving, and people leave, and who knows where they'll be. And maybe we should, should we, if we decide the matter was ripe and he should decide it, counsel goes on to say that we decide that it's ripe, that we should also decide the merits issue and not simply remand it. Because ordinarily, we would be remanding at that point. But he said the record's such that we can decide it. What do you think of that? Well, I agree if the question is the court determines that the matter is ripe regarding the use of prevailing wage surveys as a legislative matter. That is, the agency below made legislative factual findings resulted in a legal norm that's being applied today. If you find that that situation is ripe, then I do agree with the appellants that this court can decide the merits because it's a question of law. The question, though, wasn't whether we could decide and can decide. The question is should we or should we send it back? Because ordinarily, you would send something back if a court determined it wasn't right and didn't decide it. What do you think we should do? If, I still think that if the question is whether the legislative norm is ripe, then this court can decide the merits because it's a pure question of law. This court has no, or I should say the court below, the district court judge, has no considerable advantage over this panel in deciding a question of law. In fact, courts of appeals decide questions of law all the time. And an APA case is nothing but a question of law. Whether an agency action is arbitrary and capricious is a question of law. Certainly a panel can decide that. But the way in which the appellants construe their case in response to my argument, the government's argument, renders this case perhaps fit to go back to the district court if we're talking about it as a prime challenge where the issue at play is shifting empirical facts and whether on a case-by-case basis there is an adverse effect. You don't disagree, do you, that the continued operation of the private service has an effect on the immigrants that? Oh, I don't know that. That are decertified? I have no idea. That's the empirical question at issue here. It's unknown. How could it be otherwise? When a private survey, I think it's a given, is going to be less than the prevailing wage, otherwise they wouldn't do the, I mean, they're making the survey for their own economic interest. To some extent, you're not going to overrule human nature when they make these private surveys. And the result of a private survey, if it's lower, is going to become the prevailing wage and allow foreign workers to come in because it can be certified that they can find that the government, that United States workers would not take the offered price. Because the issue as far as harm or adverse effect has been equivocated by the appellants. The question about adverse effect has to do with adverse effect on the domestic labor market as a whole. And that, I pray, has not been determined. It is still percolating at the agency. They are studying the economic conditions, the empirical facts, to determine what the proper prevailing wage methodology would be under each fact and circumstance to determine whether there would be an adverse effect. If you were to acknowledge that any private survey is going to be less than the wage, the prevailing wage. No. You wouldn't acknowledge that? I'm not acknowledging that because, okay, we have a fundamental problem about terminology here. Okay, there is a government survey. That's true. There's an occupational employment statistics program that's issued by the Bureau of Labor Statistics, you know, and it's cataloged at wage collection every three years. And your position is that a private survey will always at least be that about or more? A private survey could provide more accurate data or more appropriate data. Or at least equivalent data that is not any worse than the government-provided survey. We just don't know. That is an open question. It has to be studied and is continuing to be studied and will be resolved. I thought it was admitted to the contrary, that it is lower and it does have an effect on prevailing wage. No, that's not admitted. That's not acknowledged. No, that's not acknowledged. Let me get your take on this because this is your statement. This is the department's statement. Employer-provided surveys generally are not consistently reliable. Moreover, employers typically provide private surveys when the result is to lower wages below the prevailing wage rate. Such a result is contrary to the department's role in ensuring no adverse impact. Right. That was a legislative factual finding that was made in the 2011 rule. Please don't use my words. Use the actual agency's words in the legislative factual finding, which is at 76 Federal Register 3465. But it seems like the department is doing a complete about-face now and saying that the private surveys do not necessarily. Private surveys are questionable in many circumstances. Is that because they're not legitimate? Because it occurred to me they really want to come out the same if they're surveying the same thing. Well, one would think if economics was a science, right? But, I mean, it depends upon the data collection model, whom it surveyed, and how it's reported. So, you know, it depends on the universe it surveyed. I mean, do you doubt that they're done for the purpose of lowering the wages? Well, an individual employer certainly would like to say if they have a private survey, it looks like it provides a wage that's lower than the OES wage. Of course, I mean, self-interest will dictate that the employer is going to use the private survey. It's shown by the results, isn't it? I mean, the results are that when private surveys are used, wages go down. Is there any doubt about that? Yes, I doubt that, because the department is looking at that issue in the aggregate. Okay, I think there's a fundamental confusion here, and I think the appellants are trying to exploit this confusion. There's a difference between a legislative fact and a judicative fact. There may be a lower wage rate for a particular worker in a specific case where an employer has elected to use a private survey where the survey rate is lower than OES. That would be an adjudicative fact that it would be found by the agency and maybe even endorsed by the agency in that particular case. But what's at issue in this lawsuit is the agency's legislative factual finding process about whether overall in the aggregate there is an adverse effect to the domestic labor market as a whole. That is still an open question. We don't know how private surveys have affected that in total. Could you address what seems to be the issue now, the legal issue, which is the adoption of this rule without any rationale that it was done capriciously, arbitrarily, and without process? No. I think this Court's standard for determining what the agency's reasoning process is rather expansive in scope. The case we cited, Gardner 585, Fed 3rd at 792, where the Court can take into account the attended circumstances in the regulatory history, which in this case has been announced in several Federal Register notices. It's well known, as articulated in those notices, that the Department has been engaged with stakeholders, Congress, and has been studying the economic facts and circumstances legislatively to determine the proper rule. In 2011, they attempted to resolve this issue globally by drawing a line and saying we're not going to use private surveys. The reason is because it just appears that many of them are questionable and we're not going to expend agency resources case by case looking at each survey. Some surveys could be appropriate or accurate, but we're not going to spend the time on doing it. So it was a judgment that was made at that time about administrative efficiency primarily. That was overruled by Congress. There was an appropriations rider. I find it rather disingenuous that the appellants are now going to get up here today and say, no, that's not the reason why. We all know that particular Senators had a problem with the Department globally precluding private surveys, specifically in Maryland, for example, where employers there traditionally use private surveys in the crab picking industry. That caused a political hubbub that resulted, at least in part, was the motive for Congress withholding appropriations for the 2011 rule. Well, what was it that's making these private surveys? Are they economists or whatever the companies that do it? In each particular case of private surveying? Yeah, totally. Who's in that business making surveys? Well, there are several private companies. Watson Wyatt is one that I remember. People who hire immigrants, I suppose. I'm sorry? People who hire immigrants to work. No, I believe who provides the data collection and the methodology for private surveys, correct? Yes. Would that be economists, companies of economists? I don't know that for a fact. But I do know, like, Watson Wyatt and other private survey companies do employ economists. Does the Department of Labor have a current position on the use of these surveys, employer surveys? Do you have a position? I mean, do you have a position in the 2011 rule which said that it was not a choice until you use other options, if I'm not mistaken? The baseline choice would be to preclude private surveys, but in part because of administrative efficiency. It takes a lot of time to probe down into each private survey to determine whether the methodology was proper, the universe that was surveyed was appropriate, whether there was a proper margin of error. All of these sort of statistical issues have to be looked at in each private survey. When the department adjudicates, that takes a lot of time. And they've received floods of applications, and they have to take that into account, resources and personnel allocations. But how do you get over the argument that these private surveys are not exactly the gold standard as to what they're giving the true answer to whatever the question is? They're not the ultimate thing that we're shooting for here. The fact that Congress, with the rulemaking, can throw a monkey wrench into the whole shooting match any time and put it off for another year or two. In the meantime, private surveys are being made, people are being employed at the private survey wage rate, and it's having an effect on the working people in the United States. I mean, doesn't that add up to something here that is arbitrary and calls for a rightness determination that this is prudentially right? It has to be cured. These people are being underpaid for their services. We don't know that. Well, I thought you did know it. Because you yourself have said that these private surveys are not all they're cracked up to be. At the minimum, you've said that. And how do you read that other than you're still using them and you yourself say, we don't know whether they're so great. Right. The Department of Labor has serious concerns about it. But you're still using them. Right. Because we were overruled by Congress. I know, but Congress could do that with the next budget, too. Sure. But the fact is... In the meantime, they're being used to hire people who are being underpaid for their services. As a practical matter, what's the department to do? It's faced with, of course, policy choices. It has to do economic projections. It comes out with a rule. The funding is withheld by Congress. It goes back to the drawing boards. We have to start again. We have to fashion a new rule with our policy considerations in mind, but also we have to operate this program. It has to be funded. What happened then? That has to be considered. That just can't be ignored. I believe you. If I were standing where you are and standing where I'm standing, I have great sympathies for your position. But the 2011 rule was funded and it was deemed valid by... Funding was not withheld. But because it had a replacement rule, a 2013 interim final rule, which still allowed the use of surveys. So, of course, Congress would fund it. This wasn't a problem. The fundamental problem, the sin qua non, if you will, of the 2011 rule was the private surveys. And the appropriations were withheld on that, at least in part, on that basis. That wasn't an issue in the interim final rule. It's not currently an issue and never been funded. Now, that's not to say the department is going to back away from looking at private surveys and resolving this issue globally. In fact, they're committed to doing that. They've said it several times in federal register notices and they've transmitted their intent to the Office of Management and Budget. The President has approved through the Office of Management and Budget for the rulemaking. We're collecting data, interacting with stakeholders in Congress, and they're studying economic conditions and circumstances to determine what should a global prevailing wage rate be to protect the domestic labor market. But as it currently stands, despite the fact the department does have issues with private surveys, we just don't know as a legislative fact, as an economic finding, that there is an adverse effect overall to the domestic labor market because of the use of private surveys. There may be, and we're studying that, and that will be resolved legislatively through further rulemaking. Now, it may be unfortunate the rulemaking may take time, but the time for the rulemaking has been determined by Congress and by executive orders and, frankly, by the courts as well because the courts have imposed standards on rulemaking. You have to consider significant public comments. You have to study the data, provide a rationale. All of that takes time. The rulemaking process now is burdened with a lot of procedure, and we will be following that procedure to make sure that the final rule will be upheld on judicial review if it's challenged.  The difference is the state-federal framework minimized any alleged hardship to the petitioners in that case. You don't have that here in this case. You have people being employed for what they allege to be sub-market rates, and you don't have that. So I don't know if your API case holds any weight with this panel. Well, I think the fitness and the hardship prongs are separate. I mean, you can have something that's not fit for review, and there may be hardship, but on balance the court would conclude that, okay, it should stay at hand. Because, really, the fundamental principle behind the whiteness doctrine is that the court does not want to inject – I'm sure I don't have to tell the panel this, but I've got to make myself feel better by announcing it – you withhold your judicial review because you don't want to inject yourself into the administrative process, not on legal issues, but when the administrator, or in this case the Secretary of Labor, is studying empirical facts. There is no legal principle that allows the court to opine on raw data that the agency is currently studying. We're going to finish up, Mr. Money. Oh, I'm sorry. Last comment. All right. Let's finish up. Thank you. Thank you. We're diving to get involved in this. Your Honor, just to pick up on that point about the API case, even API says that where a decision is tentative, and the decision here, these regulations are not tentative, they are being used every day, but even with a tentative decision, review is appropriate where there is immediate and significant harm. That's on page 389 of the opinion. Now, the court found there was no harm. Here, there is immediate and significant harm. U.S. workers are having to accept underpayment or lose their jobs every single time the Department of Labor issues a final labor certification. Now, I want to go back to a point. With all due respect to my opposing counsel, this case is not about some global Department of Labor thinking. It is about a very specific regulation that sets wages for foreign workers and thereby U.S. workers. That regulation was issued in 2013. The Department says we don't know whether these private surveys are harming U.S. workers. Well, in 2011, the Department made very, very specific findings that Judge Fuentes quoted, that private surveys are unreliable, that they undercut the prevailing wage, and that they result in wages that are fundamentally at odds with the Department's duty to certify no adverse effect. There are circumstances when private surveys can be used, though. There are. Now, how would you fashion the relief that you seek? Exactly. Because you're not asking that they be excluded entirely. You want to put them down at the end of the totem pole. I would do it exactly the way the Department of Labor did in its 2011 rule. So they have to go through other methodologies before reaching the private survey? That they have to, if there's a government survey available, that has to be used. That you only use private surveys where in the unusual, and it is very unusual, the government surveys cover millions of kinds of jobs. The very unusual occupations where there is no applicable government survey, and at that point you have to do something. And the 2011 rule said, that as these things are, we'll use them. That's okay, because it's such a narrow circumstance, and you do have to do something. But what the 2013 rule did, and why it should be vacated is, they threw out the 2011 limitations. They threw out the factual findings, and they simply said, okay, you can use surveys any time you want, even when there's a valid government survey, just like you did prior to the 2011 rule. And under the APA, the department can do that, but only if it explains why it is changing its mind about the fundamental facts that these surveys are unreliable and lead to wage depression. Counselor, if you were doing what we're doing here today, and we decide that this case is right, and we also decide that we should reach the merits, what would you have our order say? Precisely what relief would you want from this court on the merits? I would have the order say that Section 655.10F, the private survey rule, is arbitrary and capricious and contrary to law and beyond the department's jurisdiction, because it allows for wages that adversely affect U.S. workers, that the 2009 guidance that interprets that is contrary to the current definition of prevailing wage and is therefore unlawful. And then what? And because of these very, very serious APA violations that the department has shown no interest in correct that it has never expressed an ability to correct, the court should vacate the regulation, vacate the wage guidance, and remand to the department for further proceedings. Now, it's my understanding of APA law that when this court vacates those regulations, the 2011 rule then goes into effect. And even if it doesn't, the department can, as it did in March of 2013, Judge Davis, vacated the prior prevailing wage. So you wouldn't have us getting entangled, actually, in making regulation on how it's... Absolutely not. All this court should do is declare the rules to be in violation of the APA and vacate them. The department has ample ability to take the next step, either through an emergency rule, through reinstating the 2011 rule, or it could just do nothing and require everybody to use the government survey. Yeah. But if we do that, then automatically we put the private survey at the bottom of the totem pole. Correct. Yeah. Okay. Okay. But we would not remand that to the Department of Labor. That's the order. It's vacated. Your prior rules then step in. As a matter of law. As a matter of law. And we're not involved further. It's your baby from there on.  Mr. Tonian, thank you very much. Thank you. Thank you, both of you. Can I get a copy of the transcript? Yeah, I think that's a good idea. Gentlemen, we will need a copy of the argument transcript in this case. When we get done, could you speak to the clerk about splitting costs, et cetera? Thank you. You ready to go on? Yeah. Pardon? Yeah. One more case? Yeah. Oh, yeah.